[No. 13471.   Department Two.   July 5, 1916.]

CAROLINE ALEXANDER, *Executrix etc., Respondent,* v.
CHARLES W. BENNETT *et al., Appellants.*[1]

ADVERSE POSSESSION—VACANT LANDS—ACTUAL OCCUPANCY.   Title
by adverse possession is sufficiently shown, although the taxes had
been paid by the legal owner, where there was occupancy by plain-
tiff for the statutory period of a small strip of vacant land, which
had been cut off from the main body of the legal owner's land by a
fence maintained by plaintiff and his grantor for many years, and
which had been used as a boat landing by plaintiff and others with
his permission, and had been cultivated by plaintiff, not completely,
but to the extent that the nature of water front land allowed.

Appeal from a judgment of the superior court for King
county, Smith, J., entered August 18, 1915, upon findings
in favor of the plaintiff, in an action of ejectment, tried to
the court.   Affirmed.

*Flick & Frater,* for appellants.

*Ryan & Desmond,* for respondent.

BAUSMAN, J.—Ejectment based upon adverse possession
during more than the statutory ten years against defendant
and his grantors, who present perfect legal title with pay-
ment of taxes.

Only a small portion of defendants' land, much less than
an acre, is in question, a small appendix from the main body
along a bay in front of plaintiff's farm, separating that
farm from the water and joined with the rest of defendants'
land by a mere neck.   Plaintiff showed that, when she and
her husband bought their farm more than twenty-five years
ago from its then owner, the latter spoke of this fringe as
part of it and pointed out a fence across this neck.   The
fence, they were told, constituted the line between the estates,
which indeed seems physically and naturally the place of sev-

[1]Reported in 158 Pac. 534.

erance.   A buyer of the plaintiff's land might easily con-
ceive this small piece to be a part of it.

The tract claimed is very small and, while every bit of it
has not been, a part of it has been, kept in cultivation.   More-
over, some structures were long ago erected by the Alex-
anders on a portion.   From the cultivated piece there is a
path running to the shore and ending at a landing, which in
that neighborhood has long been called Alexander's landing.
While this landing has been used more or less by the general
public, it could be used only through the Alexander's land
and by their permission.   Finally, fairly conspicuous signs
against trespassers have long since been kept up by the
Alexanders.

Under our decisions adverse possession of vacant lands
goes, to be sure, only to so much of them as is actually oc-
cupied, yet the uncultivated portion here was part of a shore
which varied with the fullness of the lake and was not ap-
propriate for cultivation at all.   Thus it can fairly be said
that all was kept in cultivation that was fit for cultivation.
The fence across the neck has always been maintained, the
cultivation has been continuous, and the landing and the
path always in use.   In short, considering how small this
tract is, there has been a physical possession of the whole.

The case was tried without a jury, and the judge having
personally inspected these premises has had an advantage
impossible to us with the aid of photographs and diagrams.
He has found that this possession by the Alexanders was
from the first in belief of ownership, adverse, open, exclusive,
notorious, and continuous during more than the statutory
period, so under our long established rules we shall not dis-
turb his findings.   Though there was much contradictory
testimony, there was abundance to sustain them.

Judgment affirmed.

MORRIS, C. J., PARKER, and HOLCOMB, JJ., concur.